FILED & JUDGMENT ENTERED
Steven T. Salata

Nov 14 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## WILKESBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MAUDIE LAIL MEYERS, | ) | Bankruptcy Case No. 10-50090 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| HUGH WALLACE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 11-5040 |
| | ) | |
| BARRETT CRAWFORD, Trustee for the | ) | |
| Bankruptcy Estate of Maudie Lail Meyers, and | ) | |
| UNION CENTRAL LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION: (1) GRANTING PLAINTIFF'S MOTION FOR REHEARING; (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, nee JUDGMENT ON THE PLEADINGS, AND (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This action seeks to determine entitlement to $2,000,000 of term life insurance proceeds following the death of the named insured, as more particularly described below. Both the Plaintiff Hugh Wallace ("Wallace") and the remaining Defendant, Barrett Crawford, Chapter 7 Trustee for Maudie Lail Meyers ("Trustee") profess to be, or stand in the shoes of, the legal beneficiary under the policy.

Most recently in the action, the Trustee filed a Motion for Judgment on the Pleadings. Wallace responded with a Motion for Summary Judgment. A hearing on these motions was held on March 15, 2012 and the matter was taken under advisement. On March 22, 2012, I announced a decision in favor of the Trustee and called upon his counsel to draft a proposed order consistent with his pleadings and brief and to circulate it for comments by his opponent.

After receiving the draft, Wallace file a document in the cause entitled "Objections to Proposed Memorandum Opinion, Request for Findings of Fact and Request for Rehearing. Upon Wallace's suggestion that there was newly discovered evidence which should be considered, a hearing on that motion was held on June 7, 2012.

At the two hearings, John W. Taylor, Jessica V. Shaddock, and Barrett L. Crawford appeared on behalf of the Trustee. David R. Badger, Mark A. Michael, and Arathi P. Nobles appeared on behalf of Wallace.

Having considered the parties' motions, affidavits, and briefs, I conclude that Wallace's request for rehearing should be **GRANTED** and the record reopened to include additional undisputed facts.  However, having done so, I conclude that Trustee's Motion, now effectively a motion for summary judgment, should be **GRANTED** and Wallace's Motion for Summary Judgment should be **DENIED.**

### <u>STATEMENT OF FACTS</u>

On or about August 23, 2007, James Meyers purchased a renewable term life insurance contract from Union Central Life Insurance Company ("Union Central"), identified as Policy No. T000075725 in the face amount of $2,000,000 (the "Policy") insuring his own life. Under the Policy, James Meyers was the named owner as well as the insured. James Meyers designated his

grandmother, Maudie Meyers, as the beneficiary. At the time he purchased the Policy and at all times thereafter James Meyers was unmarried. He had no children or other dependents.

The Policy provided: "OWNERSHIP. While the insured is living, you have all rights in this policy. . . . You may exercise the following rights while the insured is living: (1) the right to assign the policy; (2) the right to change the owner or beneficiary; (3) the right to terminate this policy." Under the section titled "DEFINITIONS" the Policy provided that a reference therein to "you" or "your" means the owner of the policy.

The Policy further provided that premium payments were payable on or before their annual due date, which was August 23rd.   If, however, a premium was not paid on or before the due date, the policy provided a thirty-one (31) day grace period. If a premium was not paid during the thirty-one day grace period, the Policy would lapse. On the other hand, the Policy automatically renewed for an additional term at the end of the term period if premium payments were not in default, the policy was in force on that date and the renewal premium was paid within the thirty-one day grace period.

The Policy further provided that it could be reinstated at any time within five years after a lapse subject to the insurability of the insured and payment of all overdue premiums plus interest. The Policy was "subject to the laws of the state where the application is signed." At the time the application was signed, James Meyers was a resident of North Carolina.

On April 29, 2009, Union Central wrote James Meyers to advise that the Policy had been cancelled for nonpayment of premiums and to outline how he could reinstate the Policy.[1]   On June 16, 2009, James Meyers applied for reinstatement of the same.

---

[1] The timing of the letter is curious in that it was written in late April, whereas the premium was not due until August. This circumstance is not explained in the record.

A month later, on July 14, 2009, James Meyers filed his chapter 7 bankruptcy case in this bankruptcy court.   James Ward was appointed as Chapter 7 trustee for James Meyers' estate ("Ward") and served in that capacity at all relevant times thereto.

On July 14, 2009, James Meyers' bankruptcy date, Maudie Meyers was still the beneficiary under the Policy, no changes to the designation of beneficiary having been made since its purchase.

James Meyers did not disclose the Policy in his bankruptcy schedules; nor did he claim an exemption in it. No amendment was ever made by James Meyers to his bankruptcy schedules to either disclose the Policy or to claim any exemption therein.

On August 7, 2009, Union Central reinstated the Policy.

Wallace was listed as an unsecured creditor on Schedule F of James Meyers' bankruptcy petition. As such, he received notice of the filing of James Meyers' bankruptcy case. The first meeting of creditors was conducted on August 17, 2009. James Meyers did not mention the Policy to the Trustee at the creditors' meeting.  However, one week later, on August 24, 2009, James Meyers executed and submitted a change of beneficiary form to Union Central ostensibly changing the beneficiary under the Policy from Maudie Meyers to Wallace.   The only explanation in this record for making that change is the elliptical statement in the form stating that the relationship of Wallace to James Meyers was "debt coverage."

Upon receipt, Union Central accepted the change of beneficiary and changed its records to show Wallace as the beneficiary under the Policy. James Meyers' bankruptcy case was still open at the time.

On January 28, 2010, Maudie Meyers filed the current bankruptcy case in this judicial district under Chapter 11; Bankruptcy Case No. 10-50090.  On March 30, 2010, Maudie Meyers converted her case to Chapter 7. The Trustee was appointed to administer her bankruptcy estate.

On June 22, 2010, or 145 days after Maudie Meyers filed bankruptcy, James Meyers committed suicide. As a result of his death, the Policy matured. The $2,000,000 of death benefits became payable to the lawful beneficiary.

## <u>STATEMENT OF POSITIONS</u>

Wallace maintains that at the time of James Meyers' death, he was the lawful beneficiary under the Policy pursuant to the change of beneficiary executed by James Meyers while his personal bankruptcy was pending. Wallace argues that the right to change the beneficiary on the Policy did not become property of James Meyers' bankruptcy estate, and James Meyers retained the right to change the beneficiary after he filed bankruptcy.

The Trustee believes just the opposite. All of James Meyers' ownership interests in the Policy became property of his bankruptcy estate when he filed Chapter 7.   These interests included the right, as owner, to change the beneficiary under the Policy. Under the Trustee's theory, after James Meyers filed Chapter 7, only Ward, his bankruptcy trustee, could change the beneficiary.   James Meyers' attempt to change the beneficiary from Maudie Meyers to Wallace, made a week after his creditors meeting and while his Chapter 7 case was pending, was null and void under North Carolina law as well as under Section 541 of the Bankruptcy Code.   Thus, Maudie Meyers was still the beneficiary at the time that James Meyers passed away and the Policy matured. Therefore, the Trustee contends, Maudie Meyers' bankruptcy estate is entitled to the Policy proceeds as property acquired within 180 days after the filing of her bankruptcy petition under Section 541(a)(5).

## **DISCUSSION**

### **I.  Plaintiff's Request For Rehearing And To Augment The Record Should Be Granted.**

Wallace's request for rehearing is founded upon what he describes as a post-hearing discovery of evidence. Specifically, at the latest hearing Wallace's counsel described how, apparently through a copying error, the Union Central notice dated April 28, 2009 to James Meyers (suggesting that the Policy had been cancelled and advising him of how he might reinstate the same policy) was not included in materials which counsel received from the insurer.

I take counsel at his word, and on the strength of that omission elected to rehear the Motions. On the same basis, I believe the record should be reopened in order that the April 28, 2009 notice be included, together with the June 16, 2009 application for reinstatement and the August 7, 2009 policy reinstatement.

The Trustee has argued against such an inquiry under his June 5, 2012 brief, citing Rules 59 and 60 of the Federal Rules of Civil Procedure.  The Trustee points out that the affidavit of Bryan Setzler which Wallace originally filed in support of his Motion for Summary Judgment on March 6, 2012, states "[o]n July 31, 2009, Union Central received a payment of $1,528.50 to reinstate policy number T000075725.  Without this payment the policy had lapsed and would have no proceeds to pay to any beneficiary." Affidavit of J. Bryan Setzler, Docket No. 45, filed on March 6, 2012. Setzler was the insurance agent for both James Meyers and Hugh Wallace. Trustee points out that Setzler was communicating and cooperating with Wallace and his counsel during the preparation of the summary judgment motion.  Since the Setzler Affidavit (which Plaintiff presumably had a hand in drafting) mentions the Policy reinstatement, Wallace had actual knowledge of the cancellation at the time of the first hearing. The Trustee maintains this is not a new discovery.

I believe the documents pertaining to the cancellation and reinstatement of the Policy should be included in the record, for several reasons.

While the Trustee's argument is strong, there is a difference between knowing something and knowing that you know it. While the information may have been there, based upon counsel's remarks, it appears that its significance to these rather unusual legal issues was not appreciated at the outset.

Second, there is as yet no written order or final judgment, so the motion is simply one for rehearing and reopening the record. Third, a bankruptcy trustee is charged with recovering only that which belongs to the debtor. Permitting additional evidence and argument in the cause when necessary to a just result is entirely consistent with the objectives of the Bankruptcy Code.

Finally, these documents are central to the issues at hand. The arguments made by the parties in the first hearing presumed that the insurance Policy was in effect, or at least in a grace period, on the date James Meyers filed bankruptcy. The April 28, 2009 notice shows this was not the case. The Policy actually had been cancelled before bankruptcy and an application for reinstatement was pending at the filing date. This is a material change in the operant facts. Although as described below, I do not believe these new facts change the result, they should be in the record and available to a higher court for consideration on appeal.

## II. Legal Standard

The Trustee's Motion sought Judgment on the Pleadings under Rule 7012(c) of the Federal Rules of Bankruptcy Procedure. The same standard applies to Rule 12(c) motions as with Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. *See Independence News v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *Burbach Broadcasting Co of Del v. Elkins Radio*, 278 F.3d 401, 405-06 (4th Cir. 2002). In each

instance, the court should assume all facts in the pleadings of the non-movant are true and draw all reasonable inferences therefrom. *See Burbach Broadcasting*, 278 F.3d at 406; *Volvo Const. Equip. N. America v. CLM Equip.*, 386 F.3d 581, 591 (4th Cir. 2004).

In response to the Trustee's Motion, Wallace asked for summary judgment in his favor. By the first hearing, the parties were treating the two motions as if both had been filed under Rule 56.

Because Wallace's request to supplement the factual record has been granted, there are facts in the record which do not appear in the parties' pleadings (particularly, the cancellation letter from the insurer). The Trustee's motion is now more properly treated as a cross motion for summary judgment under Rule 7056.

Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure state that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper when there has been "adequate time for discovery" and the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* The moving party bears the initial burden to establish there is an absence of a genuine issue of material fact. *See id.* at 323.

## III.   Under North Carolina Law, Only The Owner Of An Unmatured Life Insurance Contract May Change The Beneficiary.

Pursuant to the terms of the Policy, North Carolina law governs the rights thereunder.  It is a well-settled principle of North Carolina law "that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380 (1986). The owner of an unmatured life insurance contract acquires the rights granted in the contract. *See id.* at 381.

One of the powers granted to an owner of an unmatured life insurance contract is the power to change the beneficiaries. *See id.*  "Consequently, it must be recognized that the owner is the only person who can exercise this power." *Id.* at 381-82.   Any change made to a beneficiary designation by someone other than the owner thereof constitutes a legal nullity and is of no force and effect. *See Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 712 S.E.2d 670, 678 (N.C.App. 2011).

As reasoned below, at the time James Meyers requested the change of beneficiary under the Policy, he was not the owner. As such, his purported change of beneficiary was a legal nullity and of no force and effect.

## IV. Unmatured Life Insurance Contracts Constitute Property Of The Bankruptcy Estate Pursuant To Section 541(A) Of The Bankruptcy Code.

### A.   Code Section 541 Brings all Debtor Owned Insurance Policies into the Bankruptcy Estate, Subject to Exemption.

Section 541(a)(1) of the Bankruptcy Code provides in relevant part:

> The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interest of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

Restated, Section 541(a)(1) provides that a bankruptcy filing creates an estate comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case" unless the property is specifically excluded by subsections (b) and (c)(2) of Section 541. The Fourth Circuit Court of Appeals has construed Section 541(a) in the broadest of terms as intended by Congress. *See Tignor v. Parkinson*, 729 F.2d 977, 980 (4th Cir. 1984).

The legislative history of the Bankruptcy Reform Act makes clear that Congress intended the bankruptcy estate to include "all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70(a) of the Bankruptcy Act." H.R. REP.NO. 95-595, at 367 (1978). Congress even intended to include in the bankruptcy estate property needed for a debtor's fresh start. S. REP.NO. 95-989, at 82 (1978). This includes potentially exempt property. Congress intended for the debtor's property to first come into the bankruptcy estate and  "then the debtor is permitted to exempt it" under 11 U.S.C. § 522. H.R. REP.NO. 95-595, at 368; *Tignor*, 729 F.2d at 980.

As the Fourth Circuit has stated,  "[t]he Bankruptcy Reform Act which repealed the old Bankruptcy Act is a significant change in the law applicable to the property of a bankrupt estate." *Tignor*, 729 F.2d at 980; see also 5 Collier on Bankruptcy, ¶ 541-LH[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (stating that Bankruptcy Code Section 541 "represented a substantial departure… from the extensive reliance of the Bankruptcy Act on nonbankruptcy law . . . to determine what property will come into the estate").

Under the former Bankruptcy Act, only non-exempt property came into the debtor's bankruptcy estate. *Tignor*, 729 F.2d at 980; William T. Vukowich, Debtors' Exemption Rights Under the Bankruptcy Reform Act, 58 N.C. L. REV. 769, 775 (1980). This resulted in "confusion and inconvenience" because once the property was determined to be exempt, the

bankruptcy court no longer had jurisdiction to determine remaining disputes regarding the same. Vukowich, supra, at 775. As such, creditors lacked a proper remedy if they asserted that their claims were exceptions to the exemption laws or that the debtor had somehow waived an exemption. *See id.*

In enacting the Bankruptcy Code, Congress decided to grant the bankruptcy courts "jurisdiction to resolve all disputes regarding exempt property." *Id.* The Bankruptcy Reform Act achieved this goal by drafting Section 541 broadly such that "all property of the debtor is included in the bankrupt estate, including exempt property." *Tignor*, 729 F.2d at 980; Vukowich, supra, at 775.

Since the Code was enacted, numerous Courts have recognized that unmatured life insurance contracts constitute property of the bankruptcy estate pursuant to Section 541(a)(1). The First Circuit Court of Appeals so held in the case of *In re Caron*, 82 F.3d 7 (1st Cir. 1996). In that joint bankruptcy case, the male debtor was the owner of an unmatured life insurance contract at the petition date. *See id.* at 9.  Under the contract, the male debtor retained the right to change the beneficiary as well as the right to surrender the policy and obtain the cash surrender value. *See id.* At the petition date, the female debtor was the primary beneficiary of the contract. *See id.* In determining whether the cash value of the policy was exempt under New Hampshire law, the First Circuit Court of Appeals stated that the "rights and powers" under a life insurance policy retained by the owner/insured, become property of the estate as of the filing of the owner/insured's bankruptcy petition. *Id.* at 10 (quoting § 541(a)(1)).

That conclusion was reiterated in the case of *In re Sims*, Case No. 09-3450, 4-5 (Bankr. D.S.C. January 11, 2010). In *Sims,* our sister state bankruptcy court pointed out that when Congress enacted Section 541, it intended to effectuate a broad sweep of the debtor's assets into

their bankruptcy estate upon the filing of their bankruptcy petition, including "[t]he interest of the owner of the insurance policy."  Similarly, in *In re Hanley*, Case No. 01- 5072, 4 (Bankr. M.D. Fla. 2003), yet another bankruptcy court concluded that "[t]he Debtor's interest in the underlying insurance policy is property of the estate under § 541(a)(1) of the Bankruptcy Code."

The principle that interests in insurance policies enter the bankruptcy estate was thoroughly explored in *In re Butcher*, 72 B.R. 240 (Bankr. E.D. Tenn. 1987).  In *Butcher*, an involuntary petition was filed against a debtor who owned a convertible life insurance policy, insuring the life of her husband and naming the debtor as the primary beneficiary. *See id.* at 240-41.  At issue was whether the trustee could change the beneficiary designation from the debtor to the debtor's bankruptcy estate. *See id.* at 240. The Tennessee Bankruptcy Court compared Section 541 of the Bankruptcy Code to Section 70a of the former Bankruptcy Act and undertook a comprehensive review of the legislative histories of each. *See id.* at 241-42.

The *Butcher* Court noted that Supreme Court case decisions from "[m]ore than eighty years ago," had discussed the purpose of "the proviso of Section 70a(5)" of the Bankruptcy Act, which permitted a debtor to retain his insurance. *Id.*; see also *In re Monahan*, 171 B.R. 710, 716 (Bankr. D.N.H. 1994) (stating that "[m]oreover, even cases decided in this District or Circuit under the old Bankruptcy Act often have inapplicable analysis due to the substantial changes between the Code and the Act in defining property of the estate generally and particularly with regard to life insurance policies.").

In *Butcher*, the debtor argued that the bankruptcy estate's interest in the unmatured life insurance contract was limited to its cash surrender value. *See In re Butcher*, 72 B.R. at 243. The bankruptcy court rejected that argument because "[t]he insurance proviso of Section 70a(5) of the former Bankruptcy Act is not found in § 541(a)." *Id.*  Rather, under Bankruptcy Code Section

541's treatment of "property of the estate," an insurance policy comes into the estate and the trustee is "vested with all rights and powers exercisable by the debtor under the terms of the policy." *Id.* at 244. That being so, the trustee was authorized to change the beneficiary designation of the unmatured life insurance contract to the bankruptcy estate. *See id.*; see also *In re Monahan*, 171 B.R. at 717 (stating that the "debtors were owners of the policies and had the power, as of the date of bankruptcy, to change beneficiaries or to cancel the policy and receive the cash surrender value. Those rights and powers became property of the estate on the filing date."); *In re Griese*, 172 B.R. 336, 336 (Bankr. D. Colo. 1994) (stating that "a debtor's interest in a life insurance policy, such as the right to designate beneficiaries . . . are property of the debtor's bankruptcy estate under 11 U.S.C. § 541.").

Just as in *Butcher*, here Wallace seeks a declaration that insurance contracts enter the bankruptcy estate only to the extent of their cash surrender value. However, Section 541(a) contains no such qualifying language. Given that both the prior proviso of Section 70a(5) of the Bankruptcy Act[2] (as more fully discussed below), and the cases interpreting it were well known to Congress, had such a result been intended, it would have been simple to include an enumerated exception under Section 541(b) for term life insurance policies with no cash surrender value. The fact that Congress did not do so is clear evidence of its intent that term life insurance contracts with no cash surrender value come within the broad reach of Section 541(a)(1). This is in keeping with the overall scheme of the Bankruptcy Code in which all of a debtor's property interests enter the bankruptcy estate, subject to potential exemption (discussed below in Section V.).

---

[2] It should be noted that even under the Act insurance policies came into the estate unless the debtor paid the policy's cash surrender value within 30 days after filing the bankruptcy.

There is no question that the right to change a beneficiary on an unmatured life insurance contract is a property right. *See Lincoln Nat. Life Ins. Co. v. Johnson*, 38 F. Supp.2d 440, 449 (E.D. Va. 1999) (quoting the Supreme Court of Virginia in *Helen Snyder Vellines v. Delma L. Ely*, 185 Va. 889, 898 (1947)).  This property right belongs to the owner of the unmatured life insurance contract. *See id*.  While *Lincoln Nat.* was decided under Virginia law, these principles of insurance law are equally true under North Carolina law, as shown in *Fidelity Bankers*. The right of a debtor/owner to change the beneficiary is bankruptcy estate property, under Section 541(a)(1), but potentially subject to exemption.

> **B.     Congress's intent to include unmatured life insurance contracts as property of the bankruptcy estate is also manifested by its provision to provide exemptions for such property under Bankruptcy Code Sections 522(d)(7) and 522(d)(8).**

Congress intended that essentially all debtor property enter the bankruptcy estate under Section 541(a)(1), but subject to removal by exemption.  To this end, Congress provided a set of federal exemptions within the Bankruptcy Code (Section 522(d)).

Under the federal exemptions of Section 522(d), Congress expressly provided two exemptions for unmatured life insurance contracts owned by the debtor. The first, Section 522(d)(7), allows a debtor to exempt "[a]ny unmatured life insurance contract owned by the debtor, other than a credit life insurance contract." This exclusion addresses term insurance contracts owned by the debtor with no cash surrender value. Vukowich, *supra*, at 786 (stating that "[l]ife insurance policies with no loan or cash surrender value would be completely exempt under this provision.").

 Second, Bankruptcy Code Section 522(d)(8) provides a limited exemption for insurance contracts possessing present value to the owner, "…not to exceed in value $11,525 . . . in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned

by the debtor under which the insured is the dependent or an individual of whom the debtor is a

dependent." This provision provides debtors with a limited exemption for any present value in an

unmatured life insurance contract owned by the debtor, when the insured is the debtor or an

individual that the debtor is a dependent. *See Cyrak v. Poynor*, 80 B.R. 75, 80 (N.D. Tex. 1987).

When Congress has provided an exemption for specific property under Section 522(d) it

is a clear indication that Section 541(a)(1) brings such property into the bankruptcy estate in the

first instance. *See Tignor*, 729 F.2d at 978.  Given these two exemptions, it is clear that Congress

intended unmatured life insurance contracts would initially enter the bankruptcy estate under

Section 541(a)(1), but potentially subject to removal by exemption.  To construe it otherwise

would render the exemption provided under Sections 522(d)(7) and 522(d)(8) superfluous.

For all of these reasons, the question is not whether James Meyer's ownership interests in

the Policy entered his bankruptcy estate; clearly, they did. The question is whether they were

exempted and thereby removed from that bankruptcy estate.

**V.     No Applicable Exemption Removed James Meyers' Interests In The Policy From
His Bankruptcy Estate.**

   **A.  Federal Exemptions are Inapplicable to this Case.**

As noted, Section 522(d)(7) allows a debtor to exempt "[a]ny unmatured life insurance

contract owned by the debtor, other than a credit life insurance contract." *Cyrak*, 80 B.R. at 80.

This exclusion addresses term insurance contracts owned by the debtor with no cash surrender

value. Vukowich, *supra*, at 786 (stating that "[l]ife insurance policies with no loan or cash

surrender value would be completely exempt under this provision.").   Section 522(d)(7)

contemplates that an unmatured life insurance contract will fall into this category if it has "no

value other than an inchoate right to benefits at the death of the insured." *Id*. Because of this

provision, the trustee *may not surrender* a life insurance contract, which remains property of the

debtor *if he chooses the Federal exemptions*. H.R. REP.NO. 95-595, at 361 (1978) (emphasis added).

Given this provision, and with no cash surrender value, James Meyers' interest in the Policy might have been exempted from his bankruptcy estate, but for two factors. One, James Meyers was required to claim state exemptions; and two, James Meyers failed to either list or to exempt these interests in his bankruptcy petition.

### B.  North Carolina has Opted out of the Federal Bankruptcy Exemptions in Favor of its Own.

In addition to providing federal exemptions within the Bankruptcy Code (Section 522(d)), Congress afforded each state the option of requiring its residents to use state exemptions.  North Carolina has opted out, such that debtors who reside in this state are limited to the exemptions found in N.C.G.S 1C-1601(a) and otherwise existent under state law. *See In re Preston*, 428 B.R. 340 (Bankr. W.D.N.C. 2009). Of these, only N.C.G.S. Section 1C-1601(a)(2) and (a)(6) are even remotely applicable to debtor owned life insurance contracts.  The former permits a debtor to claim up to $5,000 in value in any property. *See* N.C.G.S. § 1C-1601(a)(2). The latter subsection (a)(6) permits exemptions in insurance policies but <u>only</u> if the beneficiary is a spouse or child of the owner/debtor. *See* N.C.G.S. § 1C-1601(a)(6).

No one has argued that either state exemption is applicable in this case. The Union Central Contract would not have qualified under the (a)(6) exemption for life insurance policies because James Meyers was unmarried and not a father. The Policy beneficiary at James Meyers' filing date was Maudie Meyers, his grandmother. She was neither the spouse or the child of James Meyers as required by N.C.G.S. Section 1C-1601(a)(6).

Moreover, neither exemption is available because James Meyers failed to list the Policy in his bankruptcy petition and failed to assert any exemption in the same.

**C.   Because James Meyers Failed to Disclose the Policy, and Did Not Exempt His Interests in the Policy, the Policy Was Property of the Bankruptcy Estate Upon Maturity.**

Exemptions are not self-effectuating.  In *In re Norton*, the bankruptcy court held that the debtor forfeited his right to certain exemptions as a result of his failure to "comply with the state mechanisms for claiming those exemptions." *In re Norton*, 30 B.R. 712 (Bankr. E.D. Tenn. 1983).  Furthermore, "in N.C.G.S. § 1C-1601(c), *supra.*, the Legislature specified that exemptions may not be waived" unless debtor fails "to properly assert the right to exemptions." *In re Laughinghouse*, 44 B.R. 789 (Bankr. E.D.N.C. 1984).

Moreover, a debtor who fails to schedule an asset generally is not entitled to claim an exemption in it. *See Tavenner v. Smoot*, 257 F.3d 401, 407 (4th Cir. 2001) ("no property is exempt until such time as the debtor claims an exemption in it"). James Meyers neither scheduled nor exempted the Policy.  Given that he attempted to change the beneficiary of the Policy shortly after filing and while his case was open, James Meyers was aware of its existence. Under the plain and unambiguous language of the Bankruptcy Code, the Policy became property of James Meyers' bankruptcy estate upon the filing of his bankruptcy case. Because it was not listed in that bankruptcy petition nor exempted and it remained property of his bankruptcy estate at the time the Policy matured on June 22, 2010.

**VI. The Limited Authority Relied On By Wallace is Unpersuasive.**

The only Code cases cited by Wallace which lend support to his position are *In re Herrell*, 210 B.R. 386 (Bankr. N.D. F.L. 1997) and *In re Lekas*, 299 B.R. 597 (Bankr. D. Ariz. 2003).  I find neither persuasive.  Since the *Lekas* decision is founded on *Herrell*, only the latter case need be discussed.

In *Herrell*, the debtor purchased a life insurance contract insuring his own life. The debtor did not name a beneficiary and he retained the power to name or change the beneficiary at any time. *See In re Herrell*, 210 B.R. at 387.   Years later, the debtor filed bankruptcy, disclosed his ownership of the unmatured life insurance contract in his petition and claimed it as exempt under Florida's exemption laws. *See id*. The unmatured life insurance contract had no cash surrender value. *See id*.

The bankruptcy trustee objected to the exemption claim, and the debtor/insured died while that objection was pending. *See id*. With no named beneficiary, the insurance company paid the death benefit to the debtor's probate estate which then filed a motion in the bankruptcy case to determine who was entitled to the proceeds. *See id*.

*Herrell* first framed the issue before it as whether the right to designate the beneficiary is excluded from the bankruptcy estate under Section 541(b)(1) as a power that may be exercised solely for the benefit of an entity other than the debtor.  This is the first respect in which I view the matter differently than the Florida bankruptcy court.  Apparently, in *Herrell* no consideration was given to the fact that the debtor had the unqualified right to change the beneficiary, including the right to change it for his own benefit.   In my opinion, Section 541(b)(1) was inapplicable.

Second, *Herrell* noted a similarity between the limited exception clause at the end of Section 70a(3) of the Bankruptcy Act and Section 541(b)(1) of the Bankruptcy Code, and for that reason, chose to consult decisions under the Bankruptcy Act. Under the Bankruptcy Act, Section 70a provided:

> The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is

exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trade-marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: *Provided*, That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property.

This reliance on Act cases is a second aspect in which I disagree with the *Herrell* analysis.   Section 70a(3) was an inclusion provision ending with a limited exception excluding certain powers of the debtor.   While *Herrell* seeks support in a discussion of life insurance policies found in the 1996 edition of *Collier on Bankruptcy,* that discussion actually refutes *Herrell's* initial premise.

The *Collier* discussion actually stated that "[i]t was pointed out that the insured's power to change the beneficiary, reserved in the policy, 'might have been exercised for his own benefit' and was therefore within Section 70a(3)," meaning that the power was included in the bankruptcy estate. The *Collier* discussion recognized that under the Bankruptcy Act, since such a reserved power was not excluded under 70a(3), the relative parties' rights as to non-exempt life insurance policies were determined by Section 70a(5).

Section 70a(5) specifically provided that insurance policies could be excluded from the bankruptcy estate—but only if the debtor paid the cash surrender value to the trustee. Otherwise the policy passed to the trustee. That being so, when the power to designate or change the beneficiary was reserved to the debtor in the policy, he possessed the power to exercise the same for his own benefit. Hence, the exclusion provision of Section 70a(3) was inapplicable. The

power was property of the bankruptcy estate under Section 70a(3).  Similarly, Section 541(b)(1) of the Bankruptcy Code is inapplicable where the right to change the beneficiary is reserved and the debtor may exercise the right for his own benefit.

Third, *Herrell* is also founded upon an analysis of several United States Supreme Court decisions construing Section 70a(5) of the old Bankruptcy Act.  However, Section 70a(5) was expressly repealed by Congress when it enacted the Bankruptcy Code. No similar proviso is found under Code Section 541.  *Herrell* did not attach any significance to the repeal of Section 70a(5)-- arguing that inclusion in the Code was unnecessary because the Supreme Court had already decided whether life insurance policies constitute property of the estate. *See In re Herrell*, 210 B.R. at 389.

However, each of those Supreme Court decisions expressly construed Section 70a(5), the Section of the Act that Congress repealed.  For example, in *Burlingham v. Crouse*, 228 U.S. 459 (1913), the Supreme Court expressly stated that "life insurance policies are a species of property and might be held to pass under the general terms of subdiv. 5, § 70a, but a proviso dealing with a class of this property was inserted and must be given its due weight in construing the statute." *Id.* at 471. In concluding that only the cash surrender value of a policy vested in the trustee, the Supreme Court explained that this was "[a]s we have construed *the statute*." *Id.* at 473 (emphasis added). It is axiomatic that cases construing the proviso under Section 70a(5) of the Act were superseded by the repeal of the proviso.

Additionally, *Herrell* did not consider the enactment of Code Section 522(d)(7) and 522d(8), their legislative histories or Congress' intent in enacting these provisions.  In fact, *Herrell* states it had not found anything in the legislative history of the Code to indicate that Congress sought to change the results of the cases it relied upon. This appears to be oversight. As

discussed above, the House Report discussing Section 522(d)(7) specifically states that it "refers to the life insurance contract itself." Congress was clear in its intent to repeal Section 70a(5) and to replace it with Section 522(d)(7). I therefore respectfully disagree with *Herrell's* conclusion about these Act decisions construing Section 70a(5). They, like Section 70a(5), have been superseded by the Bankruptcy Code.

Finally, *Herrell is* based on the view that the right to change a beneficiary under an unmatured life insurance contract is excluded from the bankruptcy estate by Code Section 541(b)(1). As noted, that Subsection excludes from property of the estate "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." However, and as the current edition of *Collier on Bankruptcy* clarifies, Section 541(b)(1) "indicates that if the power in question may be exercised for the benefit of another entity, but is capable of conferring benefit on the debtor also, it becomes property of the estate." 5 Collier on Bankruptcy, ¶ 541.17 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (the authors provide a few examples of what this section would exclude from the estate: a special power of appointment, "a deed that contained a clause reserving in the debtor grantor the right to revoke the grant and transfer the property to certain designated third persons other than for the grantor's own use," debtor's powers as executrix of a decedent's estate, "debtor's legal interest in a testamentary trust as trustee for a life tenant and as custodian of his minor children's remainder interest.").

Here, the right to change the beneficiary under the Policy was a right purchased by James Meyers when he purchased the Policy. His right to change the beneficiary was not qualified or limited. The right was not required to be solely exercised for the benefit of another. James Meyers could exercise the right for his own benefit to name his estate as the beneficiary, to name

his creditor as beneficiary to secure financing, or to allow him the ability to sell the policy if he so chose. He also had the right to designate no beneficiary at all.

That Section 541(b)(1) is inapplicable to the current situation is demonstrated by James Meyers' own actions. His post-petition attempt to change the beneficiary was an effort to name his own creditor as the beneficiary for "debt coverage." It does not appear that Congress intended for Section 541(b)(1) to exclude a debtor's unqualified and unlimited right, as owner, to change a beneficiary designation on an unmatured life insurance contract.

## VII. Operation Of Section 541(a)(5)(C).

Section 541(a)(5)(C) states that property of the estate includes: "Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date – . . . (C) as a beneficiary of a life insurance policy or death benefit plan."

James Meyers filed his bankruptcy petition on July 14, 2009. As discussed at length above, on that date the Policy became property of James Meyers' bankruptcy estate. James Ward, as trustee for the James Meyers' bankruptcy estate, became the owner of the Policy, although he was not aware of the fact since James Meyers failed to disclose the asset. Because James Meyers was not the owner of the Policy on August 24, 2009 or anytime thereafter, his attempt to change the beneficiary to Wallace was a legal nullity and of no force or effect. Maudie Meyers remained the lawful beneficiary and was such when she herself filed Chapter 7. When James Meyers died and Maudie Meyers became entitled to the payment of the proceeds 145 days after filing her bankruptcy petition, those proceeds constituted property of her bankruptcy estate pursuant to Section 541(a)(5)(C) of the Bankruptcy Code.

**VIII. A Reinstatement Of A Life Insurance Policy Does Not Form A New Contract But Rather, The Law Treats The Reinstated Policy As If No Lapse Had Occurred.**

In his motion for rehearing, Wallace makes a new argument in his attempt to claim the insurance proceeds.  Based upon the newly discovered April 28, 2009 notice, he now maintains that the Policy did not exist on the day that James Meyers filed bankruptcy. From this, Wallace asserts that the right to designate the beneficiary did not enter James Meyers' bankruptcy estate such that the post-petition change in beneficiaries in Wallace's favor was effective.  Due to the common definition of "cancellation," his argument has a surface appeal.  However on reflection, this argument is fatally flawed.

The right to reinstate the Policy existed under the terms of the Policy and as required by North Carolina law.  The Policy stated that:

> **RIGHT TO REINSTATE**: This policy may be reinstated only within five years of lapse provided the insured is living.  Reinstatement is subject to: (1) evidence of insurability satisfactory to us; and (2) payment of all overdue premiums, with interest at the rate of 3% compounded annually from the due date of each premium.  However, in no event will this policy be reinstated after the expiration date shown in the schedule.

Section 58-58-22 of the North Carolina General Statutes stipulates that:

> **Reinstatement.** — A provision that, unless the policy has been surrendered for its cash surrender value, or its cash surrender value has been exhausted, the policy will be reinstated at any time within five years after the date of premium default upon written application therefor, the production of evidence of insurability satisfactory to the insurer, the payment of all overdue premiums, and the payment of reinstatement of any other indebtedness to the insurer upon the policy, all with interest at the rate specified.

N.C. Gen. Stat. § 58-58-22(5).

Provided that the payment was made and the insured remained medically insurable, both the Policy and State law expressly provided that the Policy could be reinstated at any time within

five years after it had lapsed. Otherwise the right to reinstate was absolute.  Under the contract and under state law, Union Central had no discretion in whether or not it reinstated the Policy.

As shown by Wallace's own motion to reconsider, the application to reinstate the policy was made on June 16, 2009. That application was pending at the date James Meyers entered bankruptcy.  As discussed above, the Policy, including the right to reinstate, became property of James Meyers' bankruptcy estate.

North Carolina law is well settled that a reinstated policy is not a new policy of insurance but instead the reinstatement "merely revives the original contract to the same extent as if there had been no lapse." *Chavis v. Southern Life Ins. Co.*, 318 N.C. 259, 263 (1986). The North Carolina Supreme Court has stated that "the reinstatement of [a] lapsed policy [does] not constitute the purchase of 'additional' life insurance. Reinstatement of a life insurance policy means that the policy is put back into force and effect. . . . Reinstatement of a lapsed policy does not result in the issuance of a new or additional insurance." *Id.* (citing to 1A J. Appleman & J. Appleman, Insurance Law and Practice 320, 356 (1981)). Further, the North Carolina Supreme Court reviewed the status in various jurisdictions regarding incontestability of a reinstated policy. Quoting *Petty v. Insurance Co.*, the Supreme Court said: "The reinstatement of the policy or contract of insurance did not have the effect of creating a new contract of insurance, dating from the time of the renewal. It had the effect only of continuing in force the original contract of insurance which would, under its terms, have terminated and become void if it had not been reinstated in the manner and within the time provided in the original contract." *Id.* at 263-64 (quoting *Petty v. Insurance Co.*, 212 N.C. 157, 161 (1937)).

Consequently, Wallace's unsupported assertion that James Meyers had no interest in the Policy at the time of his bankruptcy petition is contrary both to the contract and applicable law.

The Policy, as reinstated, was property of James Meyers' bankruptcy estate.  The fact that the Policy lapsed and was reinstated does not alter the legal analysis.

## IX. Other Objections By Wallace.

In his rehearing motion, Wallace also implies that the Maudie Meyers bankruptcy case may  be void *ab initio* and the current decision might undermine a settlement reached in another adversary proceeding in this bankruptcy case.  Neither suggestion has merit. Further, I agree with the Trustee that they are not appropriate topics for reconsideration.

The suggestion that there may be a problem with Maudie Meyers' bankruptcy filing because it was filed by James Meyers, her attorney in fact, fails on several fronts. First, Wallace has invoked this Court's jurisdiction on two separate occasions seeking to recover these insurance proceeds. In Maudie Meyers' base bankruptcy case, he originally sought an order that the life insurance death benefit be turned over to him. Thereafter, he sought similar affirmative relief by filing the present adversary proceeding. In his Complaint, Wallace also avers that this Court has jurisdiction over both the parties and the subject matter of the proceeding.

Under estoppel principles, Wallace cannot at this point in time contend that the Maudie Meyers bankruptcy case and this adversary proceeding are invalid.  When a party requests affirmative relief from a court by filing formal pleadings or commencing an action therein, it has unquestionably submitted itself to the jurisdiction of that court and subjects it to all the consequences that arise from making such appearance thereafter. *See Columbia Foundry v. Lochner*, 179 F.2d 630, 631-32 (4th Cir. 1950).

Further, Wallace's suggestion that Maudie Meyers' filing was void *ab initio* because James Meyers signed her petition under a power of attorney is factually misplaced.  Maudie Meyers signed her own petition and appeared at her first meeting.  The law presumes that she

was competent and no evidence has been presented to suggest otherwise.  There is no serious issue about the validity of her case.

Wallace's alternative argument that a ruling in the Trustee's favor will unravel a settlement in the Trustee v. Setzler & Meyers LLC adversary proceeding (Adv. No. 10-5063) is also misplaced.  That settlement—an entirely voluntary act—has already been approved, the funds have been disbursed and the adversary proceeding has been closed.   It is over.  Courts do not review and rescind their earlier rulings, every time a contrary decision is reached in a later case. Generally speaking, judgments act prospectively, especially as to prior, voluntary settlements.

Second, James Meyers never owned the Setzler & Meyers LLC insurance policy. That policy was originally owned by Overstock Outlets, LLC and was transferred to Setzler & Meyers LLC.  James Meyers was not an owner of Overstock Outlets, LLC or Setzler & Meyers LLC.  As such, Wallace's assertion that the Court's ruling in the present case will affect the settlement in the Setzler & Meyers LLC adversary proceeding is misplaced in both fact and law.

## CONCLUSION

Based on the foregoing, the Trustee's Motion for Summary Judgment is GRANTED and Wallace's Motion for Summary Judgment is DENIED. A separate Judgment consistent with this Memorandum Opinion will issue.

**SO ORDERED.**

**This Order has been signed electronically.**          **United States Bankruptcy Court**
**The judge's signature and court's seal**
**appear at the top of the Order.**